UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| STEPHEN P. STUBBS, an individual,<br><br>      Plaintiff,<br><br>         v.<br><br>CLEARWATER COUNTY, a political subdivision; CHRIS GOETZ, in his official capacity as Clearwater County Sheriff; and JOHN DOES I-X,<br><br>      Defendants. | Case No. 3:22-cv-00230-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

Before the Court is Defendants Clearwater County and Chris Goetz's (collectively the "County Defendants") unopposed motion for summary judgment (Dkt. 10). Having reviewed the record and briefing, the Court determines that oral argument is not necessary. *See* Loc. Civ. R. 7.1(d)(1)(B). For the reasons explained below, the Court will grant in part and deny in part the County Defendants' motion for summary judgment.

## BACKGROUND

This case arises out of Plaintiff Stephen Stubbs' representation of the family of an individual whom Clearwater County Deputies fatally shot on January 31,

2023. Following the officer-involved shooting, Stubbs participated in press releases with the family and responded to social media posts about the shooting. *See Def.s' Br.* at 2, Dkt. 10-1. Those social media posts are at the heart of the issues in this matter and were made on the "personal Facebook page" of Chris Goetz, the elected Sheriff of Clearwater County. *Id.*

Sheriff Goetz originally created the Facebook page to provide information to the voters of the County as part of his election campaign. *Goetz Dec.*, ¶ 3, Dkt. 10-3. However, after Sheriff Goetz was elected, he continued to maintain his Facebook page, and citizens of the County used the page to communicate with him. *Id.*, ¶ 4. Apparently, Sheriff Goetz similarly used his Facebook page to communicate with citizens of the County. In particular, Sheriff Goetz used his page "to address information and misinformation being discussed about the events of the [officer-involved] shooting." *Id.*, ¶ 5.

In response to Sheriff Goetz's post, Stubbs posted various comments on his Facebook page, including that the information communicated by Sheriff Goetz was "bologna" and that the officers investigating the shooting had tried to "intimidate a neighbor" "into lying about the victim's character." *Def.s' stmt. of facts*, ¶ 6, Dkt. 10-2. At some point after, Sheriff Goetz blocked some of Stubbs' posts from his

**MEMORANDUM DECISION AND ORDER - 2**

Facebook page.[1] *Id.*, ¶ 7.

On May 31, 2022, Stubbs filed his Complaint alleging that Sheriff Goetz's administration of his Facebook page, i.e., blocking the Facebook posts, violated the First and Fourteenth Amendments. *See Complaint*, ¶¶ 37-45, Dkt. 1. On March 29, 2023, the County Defendants filed this motion for summary judgment. Dkt. 10. Stubbs failed to file a response to the motion, and no further briefing was provided to the Court.

## LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those that may affect the outcome of the case, and a dispute about a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). "The mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Id.* at 252.

---

[1] For purposes of their summary judgment motion, the County Defendants do not dispute the content of the posts attached as Exhibit 1 to the Complaint, which show the information sent to the media regarding the officer-involved shooting was re-posted on the Facebook page or that Sheriff Goetz blocked some of Stubbs' posts he made on the Facebook page. *Id.*, ¶¶ 5-7.

In deciding whether there is a genuine dispute of material fact, the Court must view the facts in the light most favorable to the nonmoving party. *Id.* at 255; *Devereaux v. Abbey*, 263 F.3d 1070, 1074 (9th Cir. 2001) ("Viewing the evidence in the light most favorable to the nonmoving party, we must determine whether there any genuine issues of material fact and whether the district court correctly applied the relevant substantive law.") (citing *Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir. 2000)). The court is prohibited from weighing the evidence or resolving disputed issues in the moving party's favor. *Tolan v. Cotton*, 572 U.S. 650, 657 (2014).

## ANALYSIS

### A.   Effect of Stubbs' failure to timely respond.

As a threshold matter, the Court notes that Stubbs failed to respond to the motion for summary judgment. The County Defendants filed their motion for summary judgment on March 31, 2023, making April 19, 2023, the deadline for Stubbs to file an opposition. *See* Dkt. 10. However, Stubbs has not filed any form of response to date. Idaho District Local Rule 7.1 outlines:

> In motions brought under Federal Rule of Civil Procedure 56, if the non-moving party fails to timely file any response documents required to be filed, such failure shall not be deemed a consent to the granting of said motion by the Court. However, if a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Federal Rule of Civil Procedure 56(c) or Local

> Rule 7.1(b)(1) or (c)(2), the Court may consider the uncontested
> material facts as undisputed for purposes of consideration of the
> motion, and the Court may grant summary judgment if the motion and
> supporting materials - including the facts considered undisputed - show
> that the moving party is entitled to the granting of the motion.

Idaho Dist. Loc. R. 7.1(e)(2); *see also Cristobal v. Siegel*, 26 F.3d 1488, 1491 (9th Cir. 1994) (explaining that a nonmoving party's failure to respond to a motion for summary judgment, alone, does not provide authority to grant the motion; instead, the court must independently evaluate its sufficiency).

Accordingly, Stubbs' failure to timely respond to the County Defendants' motion for summary judgment is deemed acquiescence to the facts alleged in their motion. The Court thus considers the County Defendants' statement of facts as undisputed for purposes of their motion. *See Gerst v. Canyon Cnty. Jail*, No. 1:17-CV-286-BLW, 2019 WL 1386369, at *2–3 (D. Idaho Mar. 27, 2019).

**B.    Sheriff Goetz is entitled to qualified immunity.**

The Court will begin its independent evaluation by addressing the County Defendants' request for summary judgment on the claims against Sheriff Goetz, which Stubbs brings against him in both his individual and official capacity. *See Complaint*, ¶ 9, Dkt. 1. The County Defendants now claim that Sheriff Goetz is entitled to qualified immunity as established by the recent Ninth Circuit decision, *Garnier v. O'Connor-Ratcliff*, 41 F.4th 1158, 1170 (9th Cir. 2022), *cert. granted*,

143 S. Ct. 1779 (2023). *See Def.s' Br.* at 5-8, Dkt. 10-1. The Court agrees.

Stubbs appears to be bringing his constitutional claims under 42 U.S.C. § 1983. *See Complaint*, ¶ 2, Dkt. 1. To state a claim under § 1983, a plaintiff must allege a violation of rights protected by the Constitution or created by federal statute proximately caused by the conduct of a person acting under color of state law. *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). However, even if a plaintiff can establish the elements of a § 1983 claim, "[q]ualified immunity shields federal and state officials from money damages unless the official violated a statutory or constitutional right that was 'clearly established' at the time of the challenged conduct." *Garnier*, 41 F.4th at 1183 (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011)) (cleaned up).

Said differently, when a defendant asserts qualified immunity, the Court must evaluate: (1) whether the defendant violated a constitutional right, and (2) whether the constitutional right was clearly established at the time of the defendant's conduct, i.e., whether the contours of the right were sufficiently well developed so that a reasonable official should have known his conduct was unlawful. *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). Unless the answer to both questions is "yes," the defendant is entitled to immunity. *Id.* While district courts retain discretion to decide which prong of the test to tackle first, the

Supreme Court has suggested that the "clearly established" prong is the most efficient starting point. *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011).

In *Garnier*, the Ninth Circuit addressed a § 1983 action brought by a student's parents alleging that two members of a school district board of trustees violated their First Amendment rights by blocking them from commenting on their public social media pages. *Id*. at 1163. There, the two defendants created public Facebook pages to promote their political campaigns while running for the school district board of trustees. *Id*. Following their elections as trustees, the defendants continued to use these Facebook pages to post content related to the school district's business and the activities of the board. *Id.* Roughly a year after the defendants were elected, the plaintiffs, who were active members in community, began repeatedly, and often critically, posting on the defendants' Facebook pages. *Id*. at 1165. Having become frustrated with the plaintiffs' posts, the defendants began deleting the comments from their Facebook pages and eventually blocked the plaintiffs entirely.

At the beginning of its decision, the Ninth Circuit explained that the plaintiffs' claims "present an issue of first impression in this Circuit: whether a state official violates the First Amendment by creating a publicly accessible social media page related to his or her official duties then blocking certain members of

the public from that page because of the nature of their comments."

While the court eventually determined that the defendants' decisions to block certain posts constituted action under color of state law and that doing so violated the First Amendment, it nonetheless held that the defendants were entitled to qualified immunity. *See id.* at 1167; *id.* at 1183-1185. Specifically, the court found that the defendants were entitled to qualified immunity because it was not clearly established that, at the time of the constitutional violation, the plaintiffs' "had a First Amendment right to post comments on the public official's Facebook[.]" *Id.* at 1183. The Court explained that, until its decision, "no Ninth Circuit or Supreme Court authority definitively answered the state action and First Amendment questions at issue[.]" *Id.* at 1184. The court further explained that there was also a lack of a sufficient consensus of persuasive authority clearly establishing the law for purposes of qualified immunity. The court noted that out of the four circuits that have addressed the issue, three circuits applied similar modes of analysis, two of which found First Amendment violations and one did not, while the fourth circuit applied a different mode of analysis and found no violation. *Id.* "Given the novelty of applying the First Amendment and state action doctrines implicated here to the burgeoning public fora of social media," the court upheld the dismissal of the damages claims under the doctrine of qualified immunity. *Id.*

The Court finds *Garnier* to be directly on point and, therefore, dispositive to any claims for damages against Sheriff Goetz in his individual capacity. Like the trustees, all the allegedly unconstitutional conduct in this case—Sheriff Goetz's administration of his Facebook page—occurred before the Ninth Circuit issued *Granier*. *See id.*; *see also Complaint*, Dkt. 1 (Stubbs filed the Complaint in this action on May 31, 2022, roughly two months before the *Granier* decision). Since, as of May 2022, there was no controlling authority that definitively answered the issues in this case, nor was there a robust consensus of persuasive authority, it was not sufficiently clear that every reasonable official in Sheriff Goetz's position was "on notice that blocking [Stubbs] from [his] public social media page[ ] could violate the First Amendment[,]" or constitute governmental action under color of state law. *Garnier*, 41 F.4th at 1184.Therefore, Sheriff Goetz is entitled to qualified immunity regardless of whether his conduct violated a Constitutional right.

Accordingly, the Court will dismiss any claims for damages against Sheriff Goetz in his individual capacity. *See Hydrick v. Hunter*, 669 F.3d 937, 942 (9th Cir. 2012) (qualified immunity is only from suits for damages, "[c]laims for injunctive and declaratory relief are unaffected by qualified immunity."); *Cmty. House, Inc. v. City of Boise, Idaho*, 623 F.3d 945, 965 (9th Cir. 2010) ("Qualified immunity, however, is a defense available only to government officials sued in

their individual capacities.").

###     C.     Summary judgment is not warranted on Stubbs' claims against the County.

Unlike the claims against Sheriff Goetz, the County Defendants have failed to establish summary judgment is warranted as it relates to the claims against County. As explained below, the County Defendants failed to show that there is no dispute of material fact regarding multiple elements of municipal liability.

Although Stubbs' failure to respond leaves his claims unexplained, after a review of his Complaint, it is best understood that he is bringing his claims against the County under a municipality theory of liability, commonly referred to as a *Monell* claim. A municipal governmental entity, such as the County, qualifies as a "person" within the meaning of § 1983. *See Monell v. New York Department of Social Services,* 436 U.S. 658, 690 (1978). Nevertheless, the County cannot be held liable under § 1983 on a *respondeat superior* theory of recovery merely by virtue of the conduct of its employees. *See, e.g., Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 403 (1997). Rather, a municipality may be liable for constitutional torts its officials commit according to a municipal policy, practice, or custom. *See Weiner v. San Diego Cnty.*, 210 F.3d 1025, 1028 (9th Cir. 2000). The Ninth Circuit has broken this standard into four requirements that a plaintiff must show to impose municipal liability under § 1983. The plaintiff must show that: (1) he was

deprived of a constitutional right; (2) the municipality had a policy; (3) the policy amounts to deliberate indifference to the plaintiff's constitutional right; and (4) the policy is the moving force behind the constitutional violation. *See, e.g., Gordon v. Cty. of Orange,* 6 F.4th 961, 973 (9th Cir. 2021).

In their motion, the County Defendants confusingly appear to be arguing that under Federal Rule of Civile Procedure 12(b)(6), Stubbs' claims should be dismissed. *Def.s' Br.* at 4, Dkt. 10-1. In support of their claim, the County Defendants simply state that "it is undisputed that; '[n]o posts from Mr. Stubbs were ever blocked or deleted from any Facebook page that was owned, maintained or administered by [the] County[,]" and "[b]ecause the Facebook page at issue was Chris Goetz's personal Facebook Page, over which [the] County had no control, there are no facts to support a claim against [the] County[.]" *Id.*

Although the County Defendants fail to provide any analysis or authority to clarify their argument, it appears that this an attempt argue that the Court should dismiss Stubbs' *Monell* claim because no conduct was taken under color of state law and, therefore, the County could not have deprived Stubbs of a constitutional right. However, under the appropriate standard, the County Defendants have failed to show that summary judgment is warranted. That is, the County Defendants have failed to establish that there are no material issues of fact regarding any of the

elements of Stubbs' *Monell* claim.

First, the County Defendants' argument that there was no action under color of state law mistakenly relies on their apparent contention that there is only one "official" County Facebook page. In fact, it is the County Defendants' cited authority that demonstrates a material issue of fact remains. As discussed, the Ninth Circuit's decision in *Garnier* specifically addressed "whether a public official acts under color of state law by blocking a constituent from a social media page." *Garnier*, 41 F.4th at 1170. Like here, the defendants in that case created and "originally used their social media pages to promote their campaigns" to be elected to the school board of trustees and were the only administrators of those accounts. *Id*. at 1165. However, once the defendants were elected, they continued to use their Facebook pages to post content related to school business and the board's activities. *Id*. In analyzing "whether the public official's conduct, even if 'seemingly private,'" was sufficiently related to the performance of his or her official duties as to render the Facebook pages at issue "government pages," the court found the analogous line of precedent concerning whether off-duty governmental employees are acting under color of state law provided the proper framework. *Id.* at 1170 (citing *Naffe v. Frey*, 789 F.3d 1030, 1037–38 (9th Cir. 2015) as synthesizing such cases).

Despite the defendants' contentions that the Facebook pages were only "personal campaign pages[,]" the Ninth Circuit held that, under the *Naffe* framework, "given the close nexus between the [defendants'] use of their social media pages and their official positions, the [defendants] in this case were acting under color of state law when they blocked the [plaintiffs]" from their social media accounts. *Garnier*, 41 F.4th at 1170. The court explained that "the pertinent factors all indicate that [the defendants] unequivocally 'cloaked' their social media accounts 'with the authority of the state.'" *Id.* at 1173 (quoting *Howerton v. Gabica*, 708 F.2d 380, 384–85 (9th Cir. 1983)).

Although the Ninth Circuit was clear that "not every social media account operated by a public official is a government account[,]" *Id.* at 1173 (9th Cir. 2022) (quoting *Knight First Amend. Inst. at Colum. Univ. v. Trump*, 928 F.3d 226, 236 (2d Cir. 2019)), such a determination "is a process of 'sifting facts and weighing circumstances.'" *Id.* (quoting *Gritchen v. Collier*, 254 F.3d 807, 813 (9th Cir. 2001)). In other words, *Garnier* shows that a social media page does not have to be a municipality's "official" page to constitute a government page; rather, whether a public official is administering his or her social media page under color of state law is a determination only made by careful analysis and weighing of the specific facts of the case—not conclusory statements that the account is "private."

**MEMORANDUM DECISION AND ORDER - 13**

In reviewing the facts of this case, a material dispute remains as to whether Sheriff Goetz was acting under color of state law while administering his Facebook page. In their scarce discussion on the topic, the County Defendants exclusively rely on the disclaimer provided on Sheriff Goetz's page, which states,

> "[t]his is not the Official page for Clearwater County, Idaho or the Clearwater County Sheriff's Office. Things posted here might include Sheriff's Office related items, personal items or other things I find of interest. The purpose is to let the citizens of Clearwater County, Idaho know what I think since Facebook is used by so many residents[,]"

to establish that the Facebook page was "private." *Def.s' Br.* at 3. The County Defendants claim that "[b]ased on [the disclaimer] alone, this Court could determine that Sheriff Goetz was not acting under color of state law at the time he allegedly blocked [Stubbs'] Facebook posts." *Id*. at 6.

However, under the color of state law determination, "[n]o one fact can function as a necessary condition across the board." *Garnier*, 41 F.4th at 1169 (quoting *Rawson v. Recovery Innovations, Inc.*, 975 F.3d 742, 751 (9th Cir. 2020)). More importantly, what the County Defendants fail to acknowledge is that Sheriff Goetz's declaration establishes he was the elected Sheriff for the County during all relevant times, he continued to use the Facebook page to communicate with the County's citizens, specifically to "address information and misinformation being discussed about the events of the shooting, and he used the name "Sheriff Goetz"

with a background picture of a police car. *See Goetz Dec.*, ¶¶ 2-5, Dkt. 10-3; *Complaint* at 24, Dkt. No. 1-1. Thus, construing all facts in favor of Stubbs, a material dispute as to whether Sheriff Goetz was operating his Facebook page under color of state law exists.

Second, the County Defendants have failed to establish that there is no material dispute that the County's policy was not the moving force behind the alleged constitutional violation. One of the avenues for a plaintiff to meet the "policy" element is by establishing that "'the individual who committed the constitutional tort was an official with final policy-making authority' or that such an official 'ratified a subordinate's unconstitutional decision or action and the basis for it.'" *Cnty. of Orange*, 6 F.4th at 974 (9th Cir. 2021) (citation omitted); *see also Gillette v. Delmore*, 979 F.2d 1342, 1347 (9th Cir. 1992) ("a single decision by a municipal policymaker may be sufficient to trigger section 1983 liability under *Monell,* even though the decision is not intended to govern future situations."). Whether a state official is a final policymaker for the purposes of municipal liability is a question of state law. *See Cortez v. Cnty. of Los Angeles*, 294 F.3d 1186, 1189 (9th Cir. 2002) ("To determine whether the Sheriff was acting as the final policymaker for the County, we follow the analytical framework set forth in *McMillian*.")

Although the County Defendants offer no discussion regarding Sheriff Goetz's status—or lack thereof— as a final policymaker, this Court has previously held that a Sheriff can possess final decision-making authority. *See e.g., Hollist v. Madison Cnty.*, No. 4:13-CV-00139-BLW, 2015 WL 733985, at *6 (D. Idaho Feb. 19, 2015) ("Sheriff Klinger had final policymaking authority within the Sheriff's Office for employment decisions[.]"). Further, the Ninth Circuit has held that for purposes of *Monell* liability, the term "policy includes "a course of action *tailored to a particular situation* and not intended to control decisions in later situations." *Lytle v. Carl*, 382 F.3d 978, 983 (9th Cir. 2004) (quoting *Pembaur v. Cincinnati,* 475 U.S. 469, 481 (1986)) (emphasis original). "For a person to be a final policymaker, he or she must be in a position of authority such that a final decision by that person may appropriately be attributed to the [County]." *Id.* To clarify, the Court is not holding that Sheriff Goetz has final policymaking authority in this case. Rather, the County has simply failed to establish that it is undisputed Sheriff Goetz is *not* a final policymaker capable of subjecting the County to liability.

Finally, The County Defendants did not address the constitutionality of the alleged misconduct or the deliberate indifference element of a *Monell* claim. The Court will therefor similarly refrain from engaging in such analysis. It is the County Defendants' burden to show that it is entitled to summary judgment, which

they have not carried.

In short, the County Defendants have failed to establish that the County is entitled to judgment as a matter of law on Stubbs' *Monell* claims. Material issues of fact remain regarding whether Sheriff Goetz was acting under color of state law, is a final policymaker, and violated Stubbs' Constitutional rights by blocking his posts on Facebook. Accordingly, the Court will deny the County Defendants' motion for summary judgment as it relates to Stubbs' claims against the County.

## ORDER

**IT IS ORDERED that:**

1.  Defendants' Motion for Summary Judgment (Dkt. 10) is **GRANTED** as it relates to Plaintiff's damages claims against Defendant Chris Goetz in his individual capacity.

2.  Defendants' Motion for Summary Judgment (Dkt. 10) is **DENIED** as it relates to Plaintiff's claims against Defendant Clearwater County.

DATED: July 3, 2023

B. Lynn Winmill
U.S. District Court Judge