UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| STEPHEN P. STUBBS, an individual,<br><br>Plaintiff,<br><br>v.<br><br>CLEARWATER COUNTY, a political subdivision; CHRIS GOETZ, in his official capacity as Clearwater County Sheriff; and JOHN DOES I-X,<br><br>Defendants. | Case No. 3:22-cv-00230-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

**INTRODUCTION**

Before the Court is Defendant Clearwater County's motion for reconsideration of the Court's denial of the County's motion for summary judgment. Dkt. 16; *see* Dkt. 11. Plaintiff Stephen P. Stubbs opposes this motion. Dkt. 17. For the reasons stated below, the Court grants the County's motion for reconsideration and grants its motion for summary judgment.

**BACKGROUND**

**A.   Factual History**

In Clearwater County in northern Idaho, the Sheriff, Chris Goetz, serves as an elected official. As part of his campaign for this position, Sheriff Goetz created

MEMORANDUM DECISION AND ORDER - 1

a Facebook page, which he kept after the election. *Goetz Dec.*, ¶ 3, Dkt. 10-3 at 2.

He identified himself there as "Sheriff Goetz" and labeled it as a "politician" page.

Dkt. 1-1 at 22. He also included a disclaimer on it:

> This is not the Official page for Clearwater County, Idaho or the Clearwater County Sheriff's Office. Things posted here might include Sheriff's Office related items, personal items or other things I find of interest. The purpose is to let the citizens of Clearwater County, Idaho know what I think since Facebook is used by so many residents. I will not discuss open criminal cases or cases that are pending court action.

Dkt. 1-1 at 24.

After Sheriff Goetz's election, a fatal, officer-involved shooting occurred in

Clearwater County. In the aftermath of the shooting, Sheriff Goetz posted about it

on his Facebook page to address "misinformation" stemming from a tort action

filed by the family of the victim of that shooting. *Goetz Dec.*, ¶ 5, Dkt. 10-3 at 2;

Dkt. 1-1 at 4-6. He stated in the post that the information it contained "ha[d] been

sent out to the media." Dkt. 1-1 at 4.

Enter Stephen Stubbs. He was an attorney representing the family of the

victim in the shooting, and he took exception with Sheriff Goetz's posting about it.

Stubbs commented on Sheriff Goetz's post, calling it "bologna." Dkt. 1-1 at 2;

*see Def's Stmt. of Facts*, ¶ 6, Dkt. 10-2. Sheriff Goetz in turn removed Stubbs'

comment from public view. *Compl.*, ¶ 14, Dkt. 1 at 4-5. Sheriff Goetz also

restricted the ability of other Facebook users to comment on his post and blocked

**MEMORANDUM DECISION AND ORDER - 2**

Stubbs from accessing Sheriff Goetz's page. *Compl.*, ¶ 14, Dkt. 1 at 4-5.

**B.   Procedural History**

Stubbs then filed this lawsuit. He sued Sheriff Goetz in his individual capacity under 42 U.S.C. § 1983, asserting that Sheriff Goetz's Facebook activity violated Stubbs' First and Fourteenth Amendment rights. *See Compl.*, ¶¶ 2, 37-45, Dkt. 1 at 2, 10.

He also sued the County under § 1983, asserting it was liable for Sheriff Goetz's violation of Stubbs' constitutional rights under a county policy, practice, or custom—called a *Monell* claim.[1] *See* Dkt. 11 at 10; *Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 690 (1978). In response to Stubbs' suit, Defendants requested summary judgment. Dkt. 10. Stubbs did not respond.

The Court granted summary judgment, in part, and denied it, in part. Dkt. 11. It granted summary judgment for the claims against Sheriff Goetz in his personal

---

[1] Stubbs also sued John Does I-X. *Compl.*, ¶¶ 29-30, Dkt. 1 at 8. Identifying a defendant as John Doe "is not favored," but is sometimes permitted to allow the plaintiff a chance to uncover the identity of an unknown defendant. *See Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980). Stubbs has not amended his Complaint to identify these anonymous parties despite having more than three years from the filing of his Complaint to do so. The Court thus dismisses Stubbs' Complaint against John Does I-X. *See Lazaro v. Oregon Department of Corrections*, 2021 WL 5138184, at *1, n.2 (D. Or. Sept. 14, 2021).

**MEMORANDUM DECISION AND ORDER - 3**

capacity, finding he was entitled to qualified immunity against them. Dkt. 11 at 5-10. But it denied summary judgment for the claims against the County, finding that the County failed to show that there was no genuine question of material fact as to whether the requirements were met for a successful *Monell* claim. Dkt. 11 at 10-17.

After ruling on summary judgment, the Court granted Defendants' unopposed motion to stay proceedings in this case pending the Supreme Court's review of *Garnier v. O'Connor-Ratcliff*, 41 F.4th 1158 (9th Cir. 2022). Dkt. 15; *see* Dkt. 13. *Garnier* was the case this Court relied on in concluding that there was a genuine question of material fact as to whether Sheriff Goetz's Facebook activity constituted state action as required for a *Monell* claim. Dkt. 11 at 12-15; *see Lockett v. Cnty. of Los Angeles*, 977 F.3d 737, 741 (9th Cir. 2020) (determining that *Monell* claims "require a plaintiff to show an underlying constitutional violation"); *Prager Univ. v. Google LLC*, 951 F.3d 991, 996 (9th Cir. 2020) ("The Free Speech Clause of the First Amendment prohibits the government—not a private party—from abridging speech."). Eventually the Supreme Court vacated *Garnier* and remanded it to the Ninth Circuit, reasoning that in a companion case, *Lindke v. Freed*, it had set forth a different approach than the Ninth Circuit used in *Garnier* for identifying state action when public officials use social media.

**MEMORANDUM DECISION AND ORDER - 4**

*O'Connor-Ratcliff v. Garnier*, 601 U.S. 205, 208 (2024); *see Lindke v. Freed*, 601 U.S. 187 (2024). Following these Supreme Court decisions, the County asked this Court to reconsider its denial of the County's motion for summary judgment. Dkt. 16. Stubbs opposes this request. Dkt. 17.

## LEGAL STANDARD

District courts have the inherent power to reconsider an interlocutory order—one that does not settle all issues in a case and requires further court action. *City of Los Angeles, Harbor Div. v. Santa Monica Baykeeper*, 254 F.3d 882, 885 (9th Cir. 2001) (cleaned up). This power is recognized in Federal Rule of Civil Procedure 54(b), which provides that an interlocutory order "may be revised" at any time before a judgment is entered that settles all the issues in that case.

That said, the Court values forward progress, and its orders "are not intended as mere first drafts, subject to revision and reconsideration at a litigant's pleasure." *Quaker Alloy Casting Co. v. Gulfco Indus., Inc.*, 123 F.R.D. 282, 288 (N.D. Ill. 1988). So, the Court generally limits its use of the power to reconsider to situations where (1) a party presents newly discovered evidence, (2) the Court committed clear error or its initial decision was manifestly unjust, or (3) there is an intervening change in controlling law. *Sch. Dist. No. 1J, Multnomah Cnty., Or. v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993). An intervening change in

MEMORANDUM DECISION AND ORDER - 5

controlling law occurs where the reasoning of a case is "clearly irreconcilable" with the reasoning in a later decision issued by a higher court, or where a later decision "creates a significant shift" in analysis. *See Miller v. Grammie*, 335 F.3d 889, 893 (9th Cir. 2003) (overruled on other grounds by *Sanchez v. Mayorkas*, 593 U.S. 409 (2021)); *Teamsters Local 617 Pension and Welfare Funds v. Apollo Group, Inc.*, 282 F.R.D. 216, 222-24 (D. Ariz., Mar. 30, 2012). The party seeking reconsideration based on a change in controlling law must establish that such a change has occurred. *See, e.g. United States v. Westlands Water Dist.*, 134 F.Supp 2d 1111, 1131 (E.D. Cal. 2001).

## ANALYSIS

The County asks the Court to reconsider its decision denying summary judgment based on an intervening change in controlling law—namely the Supreme Court's decision in *Lindke*—and to grant summary judgment for the County.[2] Dkt. 16-1 at 7. This request triggers two questions: (1) whether *Lindke* is a change in controlling law and thus warrants reconsideration, and, if so, (2) whether this change in law means that the Court should now grant summary judgment for the County. *See, e.g.*, *Fahmy v. Hogge*, 2008 WL 4614322 (C.D. Cal. 2008)

---

[2] The portion of the decision granting summary judgment as to Stubbs' suit against Sheriff Goetz in his individual capacity is not at issue here.

**MEMORANDUM DECISION AND ORDER - 6**

(addressing separately whether grounds for reconsideration exist and whether, on reconsideration, the underlying determination was correct).

## A.      Reconsideration

The answer to the first question is yes: *Lindke* constitutes an intervening change in controlling law. The Court's finding that a genuine issue of material fact existed as to whether Sheriff Goetz's Facebook activity amounted to state action is inconsistent with the Supreme Court's later reasoning in *Lindke*. Comparing the relevant reasoning in each decision shows why.

In this Court's initial decision, it applied the "nexus" test from *Garnier* in determining that a material question existed as to whether Sheriff Goetz's Facebook activity constituted state action. Dkt. 11 at 10-17; *see Garnier*, 41 F.4th at 1169-70. The nexus test is satisfied if there is so close a connection "between the State and the challenged action that the seemingly private behavior may be fairly treated as that of the State itself." *Garnier*, 41 F.4th at 1169. In applying this test, the Court recognized that Sheriff Goetz's Facebook page contained a disclaimer in which Sheriff Goetz noted that the page was not the official page of the County or the County Sheriff, that postings on the page may have included "Sheriff's Office related items, personal items or other things" Sheriff Goetz "f[ou]nd of interest," and that the purpose of the page was to let county residents know Sheriff Goetz's

**MEMORANDUM DECISION AND ORDER - 7**

thoughts. Dkt. 11 at 14. But the Court found this disclaimer alone did not mean there was no material question whether Sheriff Goetz's conduct constituted state action because, under *Garnier*, "[n]o one fact can function as a necessary condition across the board." Dkt. 11 at 14; *see Garnier*, 41 F.4th at 1169.

The Court then pointed to several other factors it interpreted as possibly showing that Sheriff Goetz's conduct was so closely related to official activity that it constituted state action. Dkt. 11 at 14-15. For instance, the Court noted that Sheriff Goetz served as the elected Sheriff while he engaged in the Facebook activity at issue, that he used the Facebook page to communicate with county members about a shooting in the county, and that he used his official title and a photo of a sheriff's truck on his Facebook page. Dkt. 11 at 14-15. Considering these factors, the Court concluded that a material question existed as to whether Sheriff Goetz's Facebook activity amounted to state action. Dkt. 11 at 15.

In *Lindke*, though, the Supreme Court stated that whether a public official's social media activity constitutes state action depends on if that "official (1) possessed actual authority to speak on the State's behalf, and (2) purported to exercise that authority when he spoke on social media." 601 U.S. at 198. For the second question, which is the one addressed in the County's motion to reconsider, the Supreme Court stated that "the appearance and function of the social-media

activity are relevant" and that a disclaimer on the Facebook page that it is a personal page or that the views expressed in posts on that page are strictly personal would create "a heavy (though not irrebuttable) presumption that all of the posts on [the] page were personal." *Id*. at 198, 202; *see* Dkt. 16-1 at 5-7.

The Supreme Court also clarified that "an official does not necessarily purport to exercise his authority simply by posting about a matter within it." *Lindke*, 601 U.S. at 203. In fact, the Court explained that the First Amendment protects a public employee's right to speak about "information related to or learned through public employment," so long as the speech is not "itself ordinarily within the scope of [the] employee's duties." *Id*. at 197. The Court then noted that an official's speech is likely private when it consists of posts on social media about information related to the official's work that is also available elsewhere. *Id*. at 203. Similarly, the Court stated that when an official posts information related to work for personal reasons, such as pursuing reelection, that is also unlikely to be state action. *Id*.

In applying the nexus test from *Garnier* when considering Sheriff Goetz's disclaimer, this Court did not apply the heavy presumption that the posts on that page were personal, as called for in *Lindke* when the page owner notes on the page that it is private or that the content posted on the page is purely personal.

**MEMORANDUM DECISION AND ORDER - 9**

*See Lindke*, 601 U.S. at 202; Dkt. 11 at 14. Yet Sheriff Goetz stated both of these things on his page: he announced that the page was not the official page of the County or the County Sheriff and that posts on the page were aimed to communicate his thoughts to county residents. Dkt. 1-1 at 24.

To be sure, this heavy presumption is a rebuttable one. *Lindke*, 601 U.S. at 202. And in this Court's initial decision, the Court identified several additional factors that the Court viewed as raising a material question about whether Sheriff Goetz's Facebook activity amounted to state action. Dkt. 11 at 14-15. But this Court's consideration of those additional factors only underscores that the Court's reasoning was irreconcilable with that in *Lindke*, as the Supreme Court explained that each of these additional factors is either irrelevant to the state-action analysis or reflective of personal conduct. *Lindke*, 601 U.S. at 203.

For starters, this Court pointed out that Sheriff Goetz was the elected sheriff during the time period when the activity at issue here occurred. Dkt. 11 at 14. But under *Lindke*, that fact has no bearing on whether Sheriff Goetz's Facebook activity constituted state action. All it reveals is that Sheriff Goetz was, indeed, a public official. But the Court in *Lindke* stated that not all social-media posts by public officials about job-related information constitute state action because the official may have a personal motive for that post. *Lindke*, 601 U.S. at 203. And

**MEMORANDUM DECISION AND ORDER - 10**

Sheriff Goetz's motivation for his post cannot be determined merely by the fact that he was serving as an elected sheriff when he posted. *See id.*

The Court also identified in its initial decision Sheriff Goetz's use of his official title and a photo of a sheriff's truck as his Facebook page profile picture, construing these aspects of his page as supporting the finding that a material question existed as to whether his conduct amounted to state action. Dkt. 11 at 14-15. Under *Lindke*, though, these aspects of Sheriff Goetz's Facebook page, particularly when considered in the context of the rest of that page, point in the opposite direction. In *Lindke*, the Court explained that even when a public official posts on social media about job-related information, that post may be personal rather than official action when the official's motive is personal. *Lindke*, 601 U.S. at 203. Two of these personal motives are raising "public awareness" and "promoting his prospects for reelection." *Id*. Here, the larger context of Sheriff Goetz's Facebook page reveals that either or both of these "personal reasons" motivated Sheriff Goetz's post.

That context includes Sheriff Goetz labeling his page a "politician" page. Dkt. 1-1 at 14. And he explained that the "purpose" of his page was "to let the citizens of Clearwater County, Idaho know what I think." Dkt. 1-1 at 24. So, Sheriff Goetz informed any visitor to his Facebook page that he was a politician

who held office—as shown by his title and photo of his work truck—and that he was communicating his personal opinions to his constituents, thus "promoting his prospects for reelection." Under *Lindke*, such a personal motive cuts against a finding of state action. *Lindke*, 601 U.S. at 203.

The Court also found that the content of Sheriff Goetz's post about a shooting in the county indicated that there was a material question about whether his conduct was state action. Dkt. 11 at 14-15. This finding is just as irreconcilable with the reasoning in *Lindke* as the others. Again, when a public official posts job-related information for a personal reason, such as to "raise public awareness," that post does not constitute state action. *Lindke*, 601 U.S. at 203. And given Sheriff Goetz's statement in his post that he sought to counter "misinformation" about the shooting, he seems to have intended to address public awareness about the incident. Dkt. 1-1 at 4.

Moreover, the Court in *Lindke* stated that where a public official "merely repeats or shares otherwise available information" it is likely he is speaking privately about information related to or learned during public employment, not that he is exercising his official power. *Lindke*, 601 U.S. at 203. And Sheriff Goetz's post provided that he was merely echoing information already sent to the media. Dkt. 1-1 at 4. The content of Sheriff Goetz's post then, just as much as the

MEMORANDUM DECISION AND ORDER - 12

disclaimer and the labels on his Facebook page, indicate that his conduct was not state action under *Lindke*. In sum, the Court's prior reasoning is irreconcilable with *Lindke*, so *Lindke* constitutes a change in controlling law. Thus, the Court grants the County's motion to reconsider the prior decision.

## B.    Summary Judgment

The second question is whether, on reconsideration, the application of *Lindke* changes the outcome of Defendants' summary judgment motion as to Stubbs' suit against the County. To secure summary judgement in its favor, the County must show that there is no genuine issue of material fact as to whether Stubbs' suit against it can succeed. Fed. R. Civ. P. 56(a). That suit is based on a *Monell* claim and requires that Stubbs show that (1) he was deprived of a constitutional right; (2) the municipality had a policy; (3) the policy amounts to deliberate indifference to Stubbs' constitutional right; and (4) the policy is the moving force behind the constitutional violation. *Gordon v. Cty. of Orange*, 6 F.4th 961, 973 (9th Cir. 2021).

To succeed on a *Monell* claim, Stubbs must show that his constitutional rights were violated. *Lockett*, 977 F.3d at 741. And to show that, he must point to state action, as the Constitution protects against actions of the government, not private conduct. *Prager Univ.*, 951 F.3d at 996. To demonstrate that Sheriff

**MEMORANDUM DECISION AND ORDER - 13**

Goetz's Facebook activity constituted state action under the new *Lindke* standard, Stubbs must show Sheriff Goetz "(1) had actual authority to speak on behalf of the State on a particular matter, and (2) purported to exercise that authority in the relevant posts." *Lindke*, 601 U.S. at 204.

The County asserts there is no genuine question of material fact as to the second requirement. Dkt. 16-1 at 5-7. It argues that under *Lindke*, there is no material question that when Sheriff Goetz engaged in the Facebook activity at issue here, he did not purport to exercise any authority he may have had to speak for the State. Dkt. 16-1 at 5-7. The County therefore contends that the Court should now grant the County summary judgment. Dkt. 16-1 at 7. The Court agrees.

As noted previously, Sheriff Goetz provided a disclaimer on his Facebook page in which he explained the page was personal, not official. Under *Lindke*, this disclaimer carries a heavy presumption that Sheriff Goetz's activity on that page did not constitute state action. 601 U.S. at 202. In an attempt to rebut this presumption, Stubbs points to two aspects of Sheriff Goetz's Facebook activity as evidence of state action—the "politician" label on Sheriff Goetz's page and the content of his post about the shooting. Dkt. 17 at 2-3. Under *Lindke*, both points fall far short of rebutting the heavy presumption attached to Sheriff Goetz's disclaimer, even viewing the evidence in Stubbs' favor.

MEMORANDUM DECISION AND ORDER - 14

First, although Stubbs points out the "politician" label on Sheriff Goetz's page, he does not explain what significance that label has for answering the state-action question. *See* Dkt. 17 at 2-3. In any event, in drawing inferences from this evidence favorable to Stubbs, it seems this label could mean two different things. First, it could indicate to another Facebook user that Sheriff Goetz's position was an elected one. Yet in *Lindke*, the Court explained that public officials can still speak in their personal capacities, even about issues of public concern, particularly when conveying information that is available elsewhere. 601 U.S. at 197, 203. And the Supreme Court did not note that this notion was restricted for elected public officials, nor would any such limit make sense in the context of the decision. Second, the "politician" label could mean that Sheriff Goetz is running for reelection and using his Facebook page to support that effort. And in *Lindke* the Supreme Court identified "promoting his prospects for reelection" as a "personal" reason why a public official might post job-related information. *Id*. at 203. So, contrary to Stubbs' position, the "politician" label on Sheriff Goetz's page does not rebut the heavy presumption that because of his disclaimer, Sheriff Goetz's Facebook page was private.

Second, Stubbs asserts Sheriff Goetz's post was an exercise of state action because it dealt with a lawsuit following a police-involved shooting and "was a

**MEMORANDUM DECISION AND ORDER - 15**

response directed to media." Dkt. 17 at 2. But again, even a public official can speak as a private person when discussing job-related information, so long as he has a personal motive for doing so. And in *Lindke*, the Court identified one such personal motive as "rais[ing] public awareness." 601 U.S. at 203. This is what Sheriff Goetz stated he was doing in the post at issue by noting that he wanted to correct "misinformation" about the shooting. *See* Dkt. 1-1 at 4-6.

What is more, Stubbs' description of the post as "a response directed to media" is not accurate. Dkt. 17 at 2. Sheriff Goetz in fact began his post stating: "[t]he below information *has been sent out* to the media." Dkt. 1-1 at 4 (emphasis added). And where a public official "merely repeats or shares otherwise available information . . . it is far less likely that he is purporting to exercise the power of his office." *Lindke*, 601 U.S. at 203. Stubbs offers no explanation for why his characterization of the post differs from its actual language. *See* Dkt. 17. Thus, even drawing inferences from the evidence in Stubbs' favor, he fails to show how that evidence is "significantly probative" of the state action issue. *See Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000) ("A scintilla of evidence or evidence that is merely colorable or not significantly probative does not present a genuine issue of material fact."). Stubbs' second point therefore also fails to rebut the heavy presumption that Sheriff Goetz's posts on his Facebook page were

personal. *Lindke*, 601 U.S. at 202.

Stubbs has therefore failed to show that there is a material question of fact as to whether Sheriff Goetz's Facebook activity constituted state action. That activity was private as shown by the facts construed in Stubbs' favor and the law set forth in *Lindke*. Without state action, Stubbs cannot succeed in showing that Sheriff Goetz violated his constitutional rights, as required for a successful municipal liability claim. The Court thus grants Defendants' summary judgment motion as to the County.[3]

## ORDER

**IT IS ORDERED** that Defendant Clearwater County's motion for reconsideration and to grant summary judgment (Dkt. 16) is **GRANTED**.

IT IS FURTHER ORDERED that Plaintiff's Complaint against John Does I-X is **DISMISSED**.

---

[3] Stubbs does not challenge the timeliness of the County's motion for reconsideration, so any such challenge is waived. *Hanson v. Shubert*, 968 F.3d 1014, 1017 (9th Cir. 2020) ("[Plaintiff] did not contest the timeliness of the reconsideration motion in the district court and therefore waived the issue").

**MEMORANDUM DECISION AND ORDER - 17**



DATED: May 5, 2026

B. Lynn Winmill
U.S. District Court Judge

**MEMORANDUM DECISION AND ORDER - 18**